UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

DWAYNE LACOSTE, ET AL.                    CIVIL ACTION

VERSUS                                     NO: 07-2904

PILGRIM INTERNATIONAL, ET AL.             SECTION: R

## ORDER AND REASONS

Before the Court are defendant ADT-American Co.'s motion for summary judgment (R. Doc. 79), defendant Pilgrim International, Inc.'s motion for summary judgment (R. Doc. 103), and defendant CH2M HILL Constructors, Inc.'s motion for summary judgment (R. Doc. 104). For the following reasons, the Court GRANTS all three motions.

## I.    BACKGROUND

Plaintiffs brought this wrongful death and survival action to recover damages for the injury and death of Dwayne Lacoste, Sr. Mr. Lacoste's body was discovered on April 16, 2006, in the Federal Emergency Management Agency-provided trailer where he was living at the time. (Pl.'s Pet., R. Doc. 1-2 at ¶¶ II, III, V.)

Though the details of Mr. Lacoste's death are disputed, it appears undisputed that a lit cigarette caused bedding materials within the trailer to ignite and that Mr. Lacoste died as a result of carbon monoxide inhalation. (*See* Strecker Depo., R. Doc. 79-5 at 7; Fontenot Depo., R. Doc. 79-7 at 7, 15; Strecker Report, R. Doc. 82-3 at 11-12.)[1] The Terrebonne Parish coroner's report further indicates that Mr. Lacoste's blood tested positive for "Carisoprodol[, a muscle relaxant], Alprazolam[, an anti-anxiety drug], Cocaine and Cocaine metabolites, and carbon monoxide." (Strecker Report, R. Doc. 103-14 at 6.)

According to the complaint, defendant Pilgrim International, Inc., manufactured the trailer where Mr. Lacoste was living and defendant ADT-American Co. manufactured the bed sheets that were provided with the trailer. Plaintiffs allege that these defendants' products were defectively designed and manufactured and that the defects caused or contributed to Lacoste's death. Defendant CH2M HILL Constructors, Inc., was responsible for the installation of maintenance of Lacoste's trailer. Plaintiffs allege that CH2M HILL employees "negligently inspected the trailer days before the fire and failed to notice that one of the smoke detectors did not contain batteries." (Pl.'s Pet., R. Doc. 1-2 at ¶ X.) Plaintiffs allege that CH2M HILL's negligence

---

[1] Unless otherwise noted, page numbers for record citations refer to the CM/ECF page numbers rather than the page numbers of the original documents.

caused or contributed to Lacoste's death.

ADT, Pilgrim, and CH2M HILL have each filed a motion for
summary judgment asking that the claims against them be
dismissed.  Plaintiffs filed an opposition to ADT's motion for
summary judgment and have requested leave to file an untimely
opposition to Pilgrim's motion for summary judgment (R. Doc.
125), which is GRANTED.  Pilgrim requested leave to file a brief
in reply to plaintiffs' opposition (R. Doc. 127), and the
plaintiffs requested leave to file a sur-reply (R. Docs. 129,
130).  These motions are GRANTED as well.  Plaintiffs have not
filed an opposition to CH2M HILL's motions, despite having been
granted a seven-day extension of time to file.  (*See* R. Doc.
116.)  The Court now rules as follows.


II.  **LEGAL STANDARD**

Summary judgment is appropriate when there are no genuine
issues as to any material facts and the moving party is entitled
to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c);
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A court
must be satisfied that no reasonable trier of fact could find for
the nonmoving party or, in other words, "that the evidence
favoring the nonmoving party is insufficient to enable a
reasonable jury to return a verdict in her favor."  *Lavespere v.
Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.

1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See Celotex*, 477 U.S. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial.  *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

## III. DISCUSSION

### A.  Evidentiary Issues

In their opposition to the ADT and Pilgrim motions for summary judgment, plaintiffs object to certain evidence submitted by the defendants.  The Court finds it unnecessary to rule on these objections because, even if the disputed evidence were to be excluded, the two motions for summary judgment would still have to be granted.  *See infra*.  The Court will assume for the

-4-

purposes of this order that the evidence described in plaintiffs'
memoranda in opposition (R. Doc. 82 at 1-2, R. Doc. 125-4 at 1-
2.) is inadmissible.

**B.    Request for Additional Time**

Plaintiffs also argue that ADT and Pilgrims' motions for
summary judgment should be denied on the ground that "discovery
in this matter ... is not yet complete and that defendant's
Motion for Summary Judgment is premature." (R. Doc. 82 at 3; *see
also* R. Doc. 125-4 at 3.)  The Court will treat these as requests
pursuant to FED. R. CIV. P. 56(f), which provides in relevant
part:

> If a party opposing the motion shows by affidavit that, for
> specified reasons, it cannot present facts essential to
> justify its opposition, the court may:
>
> (1) deny the motion;
>
> (2) order a continuance to enable affidavits to be obtained,
> depositions to be taken, or other discovery to be
> undertaken; or
>
> (3) issue any other just order.

Rule 56(f) is designed to safeguard against a premature or
improvident grant of summary judgment. *Washington v. Allstate
Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) (citing 10A WRIGHT,
MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2740 (2d ed.
1983)).  To obtain a Rule 56(f) continuance, the nonmovant must
present specific facts explaining its inability to make a

-5-

substantive response as required by Rule 56(e) and demonstrating "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Washington*, 901 F.2d at 1285 (quoting *Securities and Exchange Commission v. Spence & Green Chemical Co.*, 612 F.2d 896, 901 (5th Cir. 1980)). The nonmovant may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts. *Id*. (citing *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 873 (5th Cir. 1978)).

In this case, plaintiffs have made no effort to explain how further discovery will enable them to rebut the defendants' assertions. They have not presented any affidavits, as required by Rule 56(f), nor have they made any attempt to describe the source or nature of their inability to respond. Indeed, plaintiffs' only objection appears to be that the motions for summary judgment were filed before the completion of discovery. A Rule 56(f) continuance cannot be granted on this basis alone. The parties have had more than a year to conduct discovery. If some key discovery issue remained unresolved, the plaintiffs could have explained the issue to the Court and demonstrated how resolution of the issue would have permitted them to respond to defendants' arguments. Instead, the plaintiffs have merely stated that discovery is incomplete. Because the plaintiffs have not made the requisite showing under Rule 56(f), the Court denies

their request for relief.

### C.    ADT

ADT has moved for summary judgment on the ground that the evidence in the record contains insufficient proof of several essential elements of the plaintiffs' product liability claims. *See Celotex*, 477 U.S. at 325. The complaint alleges that the bed sheets made by ADT suffered from both a manufacturing defect and a design defect. (*See* Pl.'s Pet., R. Doc. 1-2 at ¶¶ XIV-XV.) First, plaintiffs allege that the sheets were "unreasonably dangerous in construction and composition in that they were not fire retardant when they left the control of [ADT]." (*Id.* at ¶ XIV.) Second, they allege that the sheets were "unreasonably dangerous in design when they left [ADT's] control because [ADT] did not take action to abate the danger of fire from cigarettes." (*Id.* at ¶ XV.)

The Louisiana Products Liability Act (LPLA) "establishes the exclusive theories of liability for manufacturers for damage caused by their products." LA. REV. STAT. § 9:2800.52. The LPLA provides that "[t]he manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by claimant or another person or entity." *Id.*

§ 9:2800.54(A).  A product can be "unreasonably dangerous" in four different ways: (1) construction or composition; (2) design; (3) lack of an adequate warning, or (4) lack of conformity to express warranties.  *Id.* § 9:2800.54(B).  The plaintiff bears the burden of proving that the product was unreasonably dangerous. *Id.* § 9:2800.54(D).  The factfinder may not infer the existence of a vice or defect in a product merely because an accident occurred.  *Jaeger v. Automotive Casualty Ins. Co.*, 682 So.2d 292, 298 (La. App. 1996); *see also Ashley v. General Motors Corp.*, 666 So.2d 1320, 1322 (La. App. 1996).  In addition, the plaintiff must prove that the characteristic of the product that made it unreasonably dangerous existed at the time the product left the manufacturer's control.  LA. REV. STAT. § 9:2800.54(c).

The LPLA provides that "[a] product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer."  LA. REV. STAT. § 9:2800.55.  In order to make this showing, a plaintiff "must demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it 'unreasonably dangerous.'"  *Welch v. Technotrim,*

-8-

*Inc.*, 778 So.2d 728, 733 (La. App. 2001); *see also Morris v. United Services Automobile Ass'n*, 756 So.2d 549, 558 (La. App. 2000).

ADT has pointed out that there is no evidence in the record to support the claim that the sheets were unreasonably dangerous in construction, and plaintiffs have not offered any evidence to rebut this showing. The Court has reviewed the record and finds that there is nothing to indicate what ADT's specifications or performance standards were for sheets and no evidence that the particular sheets in the trailer materially deviated from such standards and thereby rendered them unreasonably dangerous. *See Welch*, 778 So.2d at 733. Plaintiffs have failed to identify specific facts that establish a genuine issue for trial on the manufacturing defect claim, *see Celotex*, 477 U.S. at 325, and the Court must therefore grant summary judgment in favor of ADT.

The LPLA provides that a product is unreasonably dangerous in design if, at the time if left the manufacturer's control:

> (1) There existed an alternative design for the product that was capable of preventing claimant's damage; and (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

LA. REV. STAT. § 9:2800.56. In order for the plaintiff to prove these elements, he must: (1) identify a specific alternative design that existed and was capable of preventing his injury; and

-9-

(2) perform the requisite risk-utility analysis.  *See Krummel v.*
*Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000); *Lavespere*,
910 F.2d at 183.  An alternative design must be reasonably
specific and not based on mere speculation.  *See Seither v.*
*Winnebago Industries*, Inc., 853 So.2d 37, 41 (La. App. 2003).

Plaintiffs argue that if ADT had designed bed linens that
were treated with fire-retardant chemicals, Mr. Lacoste would not
have died.  Plaintiffs refer to evidence that purportedly shows
that: (1) "the bed linen [in the trailer] was likely involved in
the ignition of the fire"; (2) "[f]ireproofing chemicals ... have
been approved and are marketed for Bed Linens"; and (3) "fire
resistant linens are sold every day."  (R. Doc. 82-1 at 3-4.)
The Court has reviewed the evidence and determines that summary
judgment must nevertheless be granted on the design defect claim.

Plaintiffs have not shown that there is a genuine issue of
material fact with respect to whether, "at the time the [sheets]
left [ADT's] control[,] ... [t]here existed an alternative design
for the product that was capable of preventing the claimant's
damage."  LA. REV. STAT. § 9:2800.56.  The only evidence of an
alternative design that plaintiffs have submitted is a printout
from the Amazon.com website featuring a brand of *wearable*
polyester baby blanket--described as a "sleepsack"--which is
intended to be zipped around a baby like clothing.  The blanket
is advertised as being "[f]lame resistant - tested to meet US

children's sleepwear standards." (R. Doc. 82-5.) The plaintiffs

claim that the existence of fire-resistant baby blankets shows

that "fire resistant linens are sold every day," which they seem

to believe demonstrates that an alternative design existed that

would have prevented Mr. Lacoste's injuries. (R. Doc. 82-1 at

4.)

This evidence is plainly insufficient to defeat ADT's motion

for summary judgment. Under the LPLA, the plaintiffs must prove

that "a feasible alternative design existed at the time the

product left the manufacturer's control." *Seither*, 853 So. 2d at

40. Even if the Court were to assume that the baby blanket

existed at the time Mr. Lacoste's sheets left ADT's control--

which there is no evidence to suggest--a wearable baby sleepsack

can hardly be considered an "alternative design" that could

substitute for ordinary adult bed sheets. The forms and

functions of the two products are simply too different for the

design of one to be relevant to the design of the other. *Cf.*

*Klem v. E.I. DuPont De Nemours & Co.*, 19 F.3d 997, 1003 ("A

product is unreasonably dangerous by design if it could have been

safer had it been designed differently or if a different product

*could have served the same purpose* and posed less danger.")

(emphasis added). Ultimately, the plaintiffs appear to be

confused about their burden on summary judgment. They argue:

"Nowhere in [ADT's] memorandum or answer do they refer to

evidence suggesting refer to evidence suggesting their sheets were fire resistant.  Therefore, defendant could have used fire resistant technology but chose not to." (R. Doc. 82-1 at 4.) But it is the *plaintiffs'* burden to set out specific facts showing that a genuine issue exists as to the challenged elements of their claim.  *See Celotex*, 477 U.S. at 324.

Plaintiffs have also failed to show that there is a genuine issue of material fact with respect to whether the purported alternative bed sheet design "was capable of preventing [the] damage."  LA. REV. STAT. § 9:2800.56.  In support of their claim, plaintiffs have attached an unauthenticated printout from the website of a spray-on fire retardant manufacturer.  The printout reports hearsay information to the effect that certain materials coated with the manufacturer's fire retardant product meet standards established by the Federal Aviation Administration, National Fire Protection Association, the American Society for Testing and Materials, and so forth.  (*See* R. Doc. 82-4.) Plaintiffs do not explain what these test results mean, however, or offer any evidence to prove that the application of fire retardant to the sheets would have prevented Mr. Lacoste's injury and death.  Indeed, the evidence does not even state that the fire retardant was approved for use on bed linens.

Even after drawing all reasonable inferences in the plaintiffs' favor, there is nothing in the current record

establishing a genuine issue as to whether a specific alternative
bed sheet design existed that would have prevented Mr. Lacoste's
injury. *See Krummel*, 206 F.3d at 551. The plaintiffs must do
more than merely speculate that these requirements are met. *See
Seither*, 853 So. 2d at 41 (finding that "there was no valid
alternative design presented" when the plaintiff's expert
"presented merely a concept that was untested, unengineered, and
not presented to the jury in any fashion more than mere
speculation").

### D. Pilgrim

Pilgrim has moved for summary judgment on the ground that
the evidence in the record contains insufficient proof of several
essential elements of the plaintiffs' claims. *See Celotex*, 477
U.S. at 325. The complaint alleges that the trailer made by
Pilgrim suffered from both manufacturing defects and design
defects. (*See* Pl.'s Pet., R. Doc. 1-2 at ¶¶ XXIII-XXIV.) First,
plaintiffs allege that the trailer:

> was defective in construction and composition in that
> materials were used that did not meet normal fire retardant
> specifications, the door handle included plastic parts that
> melted and prevented opening in case of fire, and the fire
> detectors incorporated by Pilgrim were defective.

(*Id.* at ¶ XXIII.) In addition, they allege that the trailer was
unreasonably dangerous in design because:

> it had only one door, which was located near the center of

-13-

the trailer, and it had insufficient other emergency exits;
it had only one fire extinguisher, which was located by the
door so that a fire near the door prevented occupants from
accessing the extinguisher; it had non-fire-retardant
mattresses; [and] the bathroom did not have an emergency
exit or window.

(*Id.* at ¶ XXIV.)

Pilgrim argues that nothing in the record indicates that the
trailer deviated from its design specifications, that a design
defect rendered the trailer unreasonably dangerous, or that a
characteristic of the trailer proximately caused Mr. Lacoste's
death. It has attached a number of documents in support of its
view that there are no genuine issues of material fact with
respect to the LPLA claims. (*See* R. Doc. 103-5 - 103-22.)

As noted, the plaintiffs requested leave to file an untimely
response to Pilgrim's motion, which the Court granted in this
order. Pilgrim requested leave to file a reply brief, and the
plaintiffs requested leave to file a sur-reply, which the Court
also granted. *See supra*. Even considering the expanded record,
however, the plaintiffs have not presented any evidence with
respect to the alleged manufacturing defect. As with the bed
linens, there is nothing in the record to indicate what Pilgrim's
specifications or performance standards were for trailers and no
evidence that the particular trailer inhabited by Mr. Lacoste
materially deviated from such standards and thereby rendered it
unreasonably dangerous. *See Welch*, 778 So.2d at 733. Plaintiffs
have failed to identify specific facts that establish a genuine

-14-

issue for trial on the manufacturing defect claim, *see Celotex*, 477 U.S. at 325, and the Court must therefore grant summary judgment in favor of Pilgrim.

As to the alleged design defect, Pilgrim argues that there is no evidence that the trailer was unreasonably dangerous in design. In response, the plaintiffs argue that the trailer could have been designed with an extra escape hatch in the bathroom, which they claim would have prevented Mr. Lacoste's death by providing him with a more accessible means of egress.

As noted above, a plaintiff alleging a design defect must prove that:

> (1) There existed an alternative design for the product that was capable of preventing claimant's damage; and (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

LA. REV. STAT. § 9:2800.56. With respect to the alternative design, plaintiffs have submitted (1) a photograph of what is apparently an escape hatch on a different trailer model (*see* R. Doc. 125-6), and (2) the unsworn report of a supposed RV expert who asserts that "there aren't any structural factors or safety factors that would have prevented the manufacturer from constructing the Vehicle with a bathroom escape window" (R. Doc. 125-5 at 3). This evidence is insufficient "to enable a reasonable trier of fact to conclude that [plaintiffs have]

-15-

established ... that safer alternative designs were in existence at the time the [trailer] left [Pilgrim's] control." *Morgan v. Gaylord Container Corp.*, 30 F.3d 586, 590 (5th Cir. 1994). As noted above, a plaintiff is required to present specific evidence of an actual alternative design that existed when the product left the manufacturer's control. Here, "[t]he record is devoid of any technical drawings, calculations, scientific study, ... or the publication of any engineering principles as to this proposed alternative design." *Seither*, 853 So. 2d at 41. A contextless photograph and the bare, unsworn opinion of someone in the RV business are not a sufficient evidentiary basis for a jury to conclude that there existed an alternative design for Mr. Lacoste's trailer at the time it left Pilgrim's control.

In addition, plaintiffs have failed to show that there is a genuine issue of material fact with respect to whether the purported alternative trailer design "was capable of preventing [the] damage." LA. REV. STAT. § 9:2800.56. Their evidence on this point is scanty. Plaintiffs' fire inspection expert testified that the smoke patterns in the bathroom indicated that the bathroom door might have been opened at some point during the fire, which could suggest that the Mr. Lacoste was in the bathroom when the fire began. (*See* Strecker Depo., R. Doc. 103-7 at 12-13.) The plaintiffs argue that this demonstrates that Mr. Lacoste could have escaped from a bathroom hatch if one had been

available.  In a similar vein, the supposed RV expert's unsworn
report concludes that "[t]here is a high probability Dwayne
Lacoste's death could have been avoided if the manufacturer would
have installed an escape window in the bathroom." (R. Doc. 125-5
at 4.)  There is no explanation of what information this
conclusion is based on.

Even after drawing all reasonable inferences in favor of the
plaintiffs, the evidence is not enough to support a jury verdict
in their favor.  It would take an impermissible leap of faith for
a jury to conclude, based on the vague hint that Mr. Lacoste
might have opened the bathroom door at some point, that an extra
escape hatch could have prevented Mr. Lacoste's death.  As
plaintiffs' expert recognized, Mr. Lacoste's small trailer
already came equipped with an exit door and three emergency exit
windows, and was in compliance with the relevant standards of the
National Fire Prevention Association.  (*See* Strecker Report, R.
Doc. 82-3 at 5, 12.)  Indeed, Mr. Lacoste's body was found next
to one of the existing escape hatches.  (*See* Strecker Report, R.
Doc. 103-8 at 16.)  All of the evidence on record suggests that
it was Mr. Lacoste's impaired condition, not the lack of an exit
in the bathroom, that prevented him from escaping the fire.
Because the plaintiffs have not established a genuine issue of
fact as to this element of their design defect claim, summary
judgment is appropriate.

### E.   CH2M HILL

Defendant CH2M HILL, one of the prime contractors selected by FEMA to install and maintain temporary housing units for Louisiana residents, has also moved for summary judgment. The plaintiffs have not answered this motion despite having been granted extra time to respond. As such, all of the facts set forth in CH2M HILL's Statement of Uncontested Material Facts (R. Doc. 104-3) are deemed to be admitted. *See* LOCAL CIV. R. 56.2.

The plaintiffs' claim against CH2M HILL sounds in negligence rather than products liability. The complaint alleges that "[e]mployees of [CH2M HILL] negligently inspected the trailer days before the fire and failed to notice that one of the smoke detectors did not contain batteries." (Pl.'s Pet., R. Doc. 1-2 at ¶ X.) "If CH2M HILL had properly carried out the inspection," plaintiffs argue, "the problem with the smoke detector would have been found and the device would have sounded alerting Mr. Lacoste and saving his life." (*Id.*)

Article 2315 of the Louisiana Civil Code provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The Louisiana courts require a plaintiff to prove five elements in order to prevail on a claim for negligence:

> (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element);
>
> (2) proof that the defendant's conduct failed to conform to

the appropriate standard (the breach element);

(3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element);

(4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and

(5) proof of actual damages (the damages element).

*Long v. State ex rel. Dept. of Transp. and Dev.*, 916 So.2d 87, 101 (La. 2005). Although it is not perfectly clear from the complaint, it appears that plaintiffs allege that CH2M HILL assumed a duty to inspect and maintain the trailer, *cf. Hebert v. Rapides Parish Police Jury*, 974 So.2d 635, 643 (La. 2007) ("[O]ne who does not owe a duty to act may assume such a duty by acting."), that it breached its duty by failing to replace the batteries in the smoke detector, and that the breach was both a cause-in-fact and a legal cause of Lacoste's death. CH2M HILL challenges the duty element. It argues that it did not owe Lacoste a duty to replace the batteries in the smoke detector or to alert him to the absence of batteries. The existence or nonexistence of a duty is a question of law. *Ellison v. Conoco, Inc.*, 950 F.2d 1196, 1205 (5th Cir. 1992).

It is undisputed that CH2M HILL entered into a contract with FEMA in which it agreed to install and maintain temporary housing units for hurricane victims. (*See* R. Doc. 104-2 at 2.) As part of its contract, CH2M expressly agreed to "make [the] travel

-19-

trailer ready for occupancy" by, *inter alia*, "[t]est[ing] smoke detector and replac[ing] if faulty" at the time CH2M HILL installed the trailer. (FEMA Contract, R. Doc. 104-6 at 10.) But plaintiffs have not alleged that the smoke detector was always faulty, and CH2M HILL has presented evidence to show that the smoke detector was working properly at the time it was installed. (*See* Pl.'s Pet., R. Doc. 1-2 at ¶ X; Inspection Report, R. Doc. 104-4 at 3.) Rather, plaintiffs claim that CH2M HILL employees should have noticed the missing batteries during the maintenance inspections they conducted *after* installation.[2]

There is no evidence that CH2M HILL assumed an ongoing duty to maintain the batteries in Mr. Lacoste's smoke detector. The FEMA contract obligated CH2M HILL to "do maintenance necessary to maintain the temporary housing units in a safe, working, and livable condition." (FEMA Contract, R. Doc. 104-7 at 7.) The following sentence, however, adds a caveat: "The contractor shall perform only those corrective actions that require the effort of skilled technicians or laborers." (*Id.* at 7-8.) The Court finds it difficult to believe that changing the batteries of an ordinary smoke detector requires skilled assistance. Similarly,

---

[2] The Court notes that the trailer contained a second smoke detector with batteries (*see* Strecker Report, R. Doc. 82-3 at 7), as well as a carbon monoxide detector that appears to have been set off during the fire (*see id.* at 7, 12). It seems unlikely that a third functioning detector would have been enough to save Mr. Lacoste, particularly given his drug-impaired condition.

while CH2M HILL undertook responsibility "for all interior and exterior components of the unit," the contract provides that it was "not responsible for replacing such items as light bulbs, stoppers, drain baskets, extra door keys, light covers, etc." (*Id.* at 2.)

Finally, the FEMA Trailer User's Guide squarely assigns responsibility for smoke detector battery replacement to the user: "[b]uying a replacement battery [for the smoke detector] is *your* responsibility." (User's Guide, R. Doc. 104-8 at 13 (emphasis added).)  The guide further advises users to:

> Check the operation of your smoke detectors weekly.  Press in and hold the small button on the detector until the alarm sounds.  If it doesn't, replace the batteries and test again.  If it still doesn't work, call the Maintenance Hotline.

(*Id.* at 3.)  A sticker mounted next to the smoke detectors echoes these warnings to the user: "WARNING.  Test smoke alarm operation after vehicle has been in storage, before each trip, and at leave once per week during use.  Failure to comply may result in serious injury." (R. Doc. 104-9.)

In light of these considerations, and the absence of any evidence to the contrary, it is clear that CH2M HILL did not assume a duty to maintain the batteries in Mr. Lacoste's smoke detector.  Because the plaintiffs have failed to demonstrate that there is a genuine issue of material fact as to whether CH2M HILL was under a legal duty to maintain the batteries in Mr. Lacoste's

smoke detector, CH2M HILL is entitled to summary judgment. *Cf.*
*Perkins v. Entergy Corp.*, 782 So.2d 606, 611 (La. 2001) ("If the
plaintiff fails to prove any one element [of the duty/risk
analysis] by a preponderance of the evidence, the defendant is
not liable.")


## IV.  CONCLUSION

For the foregoing reasons, the parties' motions for leave to
file supplemental memoranda (R. Docs. 125, 127, 129, 130) are
GRANTED; ADT-American Co.'s motion for summary judgment (R. Doc.
79) is GRANTED; Pilgrim International, Inc.'s motion for summary
judgment (R. Doc. 103) is GRANTED; and CH2M HILL Constructors,
Inc.'s motion for summary judgment (R. Doc. 104) is GRANTED.


New Orleans, Louisiana, this 15th day of January, 2009.


Sarah Vance
_____
            SARAH S. VANCE
       UNITED STATES DISTRICT JUDGE