UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

DWAYNE LACOSTE, ET AL.                    CIVIL ACTION

VERSUS                                    NO: 07-2904

PILGRIM INTERNATIONAL, ET AL.             SECTION: R

**ORDER AND REASONS**

Before the Court are defendant Papermates, Inc.'s motion for
summary judgment, R. Doc. 143, and plaintiffs' motion for
reconsideration of this Court's order of January 15, 2009, R.
Doc. 142.  For the following reasons, the Court GRANTS
Papermates' motion and DENIES plaintiffs' motion.

**I.    BACKGROUND**

Plaintiffs brought this wrongful death and survival action
to recover damages for the injury and death of Dwayne Lacoste,
Sr.  Mr. Lacoste's body was discovered on April 16, 2006, in the
Federal Emergency Management Agency-provided trailer where he was
living at the time.  Compl., R. Doc. 1-2 at ¶¶ II, III, V.
Although the details of Mr. Lacoste's death are disputed, it

appears undisputed that a lit cigarette caused bedding materials within the trailer to ignite and that Mr. Lacoste died as a result of carbon monoxide inhalation. *See* Strecker Depo. at 118; Fontenot Depo. at 71; Coroner's Report, R. Doc. 79-7 at 15; Strecker Report, R. Doc. 82-3 at 11-12.[1] The Terrebonne Parish coroner's report further indicates that Mr. Lacoste's blood tested positive for "Carisoprodol, [a muscle relaxant,] Alprazolam, [an anti-anxiety drug,] Cocaine and Cocaine metabolites, and carbon monoxide." Coroner's Report, R. Doc. 79-7 at 15.

In their original complaint, plaintiffs named Pilgrim International, Inc. as a defendant. Pilgrim manufactured the trailer where Mr. Lacoste was living at the time of the fire. Plaintiffs alleged in the complaint that the trailer was unreasonably dangerous in construction and design and that the defects caused or contributed to Mr. Lacoste's death. Pilgrim moved for summary judgment on plaintiffs' product liability claims, and the Court granted that motion on January 15, 2009. *See* R. Doc. 135. Plaintiffs have now filed a motion asking the Court to vacate its January 15, 2009 order as to Pilgrim. R. Doc. 142.

Plaintiffs filed an amended complaint on September 10, 2008,

_____

[1] All deposition citations are to the original page number. All other citations are to the CM/ECF document page number.

-2-

naming Papermates, Inc. as a defendant.  According to the amended
complaint, Papermates is the manufacturer of a type of ash tray
known as the "Ash Eliminator Extinguishing Ashtray Holder."
Amended Compl., R. Doc. 111 at ¶ XIX.  Plaintiffs allege that Mr.
Lacoste owned an Ash Eliminator and that the Ash Eliminator was
"a cause of the fire" that resulted in Mr. Lacoste's death.  *Id.*
at ¶ XX.  They further allege that Papermates is liable for Mr.
Lacoste's death under the Louisiana Products Liability Act, LA.
REV. STAT. §§ 2800.51, *et seq*., because the Ash Eliminator was
(1) unreasonably dangerous in design, (2) unreasonably dangerous
because of inadequate warnings, and (3) unreasonably dangerous
because of its nonconformity to an express warranty.  Amended
Compl., R. Doc. 1-2 at ¶¶ XIX-XXI.

Papermates has now moved for summary judgment on plaintiffs'
product liability claims.  R. Doc. 143.  The Court has considered
this motion and plaintiffs' motion to vacate the January 15, 2009
order and now rules as follows.


**II.  SUMMARY JUDGMENT**

**A.  Threshold Issues**

Plaintiffs make two threshold arguments in their memorandum
in opposition to summary judgment.  First, they argue that
certain broad categories of evidence should be excluded from
consideration.  As before, the Court finds it unnecessary to rule

on these objections.  Even if the disputed evidence were to be
excluded, Papermates' motion for summary judgment would still
have to be granted because the plaintiffs have not presented
sufficient evidence to enable a reasonable jury to return a
verdict in their favor.  The Court will thus assume for the
purposes of this order that the evidence described in plaintiffs'
memorandum in opposition is inadmissible.

Second, plaintiffs argue that Papermates' motion for summary
judgment should be denied on the grounds that "discovery in this
matter is not yet complete and ... defendant's Motion for Summary
Judgment is premature." R. Doc. 151 at 2.  This argument is a
word-for-word copy of the arguments plaintiffs made in response
to two earlier motions for summary judgment in this case. *See* R.
Doc. 82 at 3; R. Doc. 125-4 at 3.  The Court has already
explained why a vague and unsupported request for additional time
fails to meet the standard under FED. R. CIV. P. 56(f). *See* R.
Doc. 135 at 5-7.  The present request is denied for the same
reasons. *Id.*

**B.   Legal Standard**

Summary judgment is appropriate when there are no genuine
issues as to any material facts and the moving party is entitled
to judgment as a matter of law. *See* FED. R. CIV. P. 56(c);
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A court

must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

### C. Discussion

The Louisiana Products Liability Act (LPLA) "establishes the exclusive theories of liability for manufacturers for damage

caused by their products." LA. REV. STAT. § 9:2800.52. The LPLA

provides that "[t]he manufacturer of a product shall be liable to

a claimant for damage proximately caused by a characteristic of

the product that renders the product unreasonably dangerous when

such damage arose from a reasonably anticipated use of the

product by claimant or another person or entity." *Id.*

§ 9:2800.54(A). Pursuant to this provision, a plaintiff must

establish four elements in order to prevail on an LPLA claim:

1. that the defendant is a manufacturer of the product;

2. that the claimant's damage was proximately caused by a characteristic of the product;

3. that this characteristic made the product "unreasonably dangerous"; and

4. that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 260-61

(5th Cir. 2002).

A product can be "unreasonably dangerous" in four different

ways: (1) construction or composition; (2) design; (3) lack of an

adequate warning, or (4) lack of conformity to express

warranties. LA. REV. STAT. § 9:2800.54(B). Plaintiffs have

alleged that the Ash Eliminator was unreasonably dangerous in

three of the four possible ways. First, they claim that it was

unreasonably dangerous in design because it was significantly

taller than a traditional ash tray. According to the plaintiffs,

-6-

this feature increased the risk that a lit cigarette resting on the lip of the Ash Eliminator would fall and roll toward a flammable object. *See* Amended Compl., R. Doc. 111 at ¶ XIX; R. Doc. 151 at 7. Second, they claim that the Ash Eliminator "failed to warn users sufficiently of the danger of using the ash tray to hold lit cigarettes." Amended Compl., R. Doc. 111 at ¶ XXI. Finally, they claim that the Ash Eliminator "violated an express warranty of a safer ash tray because it was not in fact safer than standard ash trays." *Id.* at ¶ XX.

Papermates asserts in its memorandum in support of summary judgment that the plaintiffs cannot satisfy any elements required to establish a claim under the LPLA. It focuses on four principal grounds for summary judgment, all of which go to the issue of causation. First, Papermates argues that there is no evidence that an Ash Eliminator was inside the trailer at the time of the incident. Second, Papermates argues that there is no evidence that Mr. Lacoste was using an Ash Eliminator at the time of the incident. Third, Papermates argues that there is no evidence that a cigarette fell out of the Ash Eliminator and started the fire. Finally, Papermates argues that there is no evidence that the characteristics of the Ash Eliminator that allegedly rendered it unreasonably dangerous caused the fire. The Court will address each of these arguments in turn.

Papermates first argues that there is no evidence that an

Ash Eliminator was inside the trailer at the time of the incident. Papermates supports its argument by pointing to the deposition testimony of Brian Fontenot, a representative of the Louisiana Office of State Fire Marshal who inspected Mr. Lacoste's trailer on the day of the fire. When asked whether he had found an ash tray in or around the trailer, Mr. Fontenot testified: "No, ma'am, other than what I believe was used as an ash tray was the Coke can." Fontenot Depo. at 58; *see also id.* at 73 (indicating that he had never seen the Ash Eliminator before). Glenn Strecker, the plaintiffs' private fire investigator who inspected the trailer one month after the fire, also indicated that a soda can containing smoking material was found in the trailer. *See* Strecker Depo. at 35-36. He did not personally observe an ash tray in the trailer at the time of his inspection. *See id.* at 38.

Plaintiffs have now come forward with evidence to show that an Ash Eliminator was inside Mr. Lacoste's trailer at the time of the fire. Shalane Lodrigue, the decedent's daughter, and Phyliss Lacoste, the decedent's wife, have submitted affidavits in which they aver that they were the first two people to enter Mr. Lacoste's trailer after the fire. They claim to have seen the following objects on a chair in the trailer: the Ash Eliminator depicted in a photograph they have submitted, "a Coke can," and a remote control. P. Lacoste Aff., R. Doc. 151-3 at 12; *see also*

-8-

Lodrigue Aff., R. Doc. 151-3 at 13. Plaintiffs' counsel, John
Conry, has submitted a declaration under penalty of perjury
stating that Phyliss Lacoste retrieved the "ashtray at issue"
from the trailer and delivered it to him. Conry Decl., R. Doc.
151-3 at 10. Mr. Conry then "kept custody of the ashtray until
[he] gave it to Glen Strecker when [he] hired him to investigate
the matter." *Id*. Mr. Conry further states that the ash tray has
been in the custody of "Strecker and Rimkus or Conry & Associates
since it was taken from the scene of the fire." *Id.* Although
the declaration does not so state, the Ash Eliminator is
apparently in Mr. Conry's custody at the present time. *See* R.
Doc. 151 at 5.

Plaintiffs' submissions raise several questions and
concerns. First, the briefs and affidavits indicate that a key
piece of evidence was removed from the scene of a deadly fire
before the representative from the fire marshal's office had
arrived to conduct a legally mandated investigation. *See* LA.
REV. STAT. § 40:1568.1 ("The fire marshal shall order a special
investigation of any fire resulting in any human death within
this state."). Such conduct is highly irregular. Second, Mr.
Conry states in his declaration that Ms. Lacoste retrieved the
"ashtray at issue" from the trailer, but he does not state
whether and how he has "personal knowledge" of this fact. FED.
R. CIV. P. 56(e)(1). Ms. Lacoste does not say anything in her

affidavit about the removal of the Ash Eliminator from the trailer. Third, Mr. Conry's declaration departs from the statutorily prescribed form in an unusual way. Rather than declaring that the facts set out in the declaration are "true and correct" or that the declaration was made "under penalty of perjury," 28 U.S.C. § 1746, Mr. Conry states that "representations made as to witnesses in this matter are true and correct to the best of my knowledge." Conry Decl., R. Doc. 151-3 at 10. It is not entirely clear what this means, but it does not appear to be in substantial conformity with the form prescribed in 28 U.S.C. § 1746. *Cf. Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) (holding that an affidavit that does not substantially conform to the requirements of 28 U.S.C. § 1746 "must be disregarded as summary judgment proof").

Notwithstanding the concerns raised by these submissions, the Court finds that there is a genuine issue of fact as to whether the Ash Eliminator was in Mr. Lacoste's trailer at the time of the fire. Ms. Lacoste and Ms. Lodrigue, the first people to enter the trailer after the fire, have both sworn under oath that they saw the Ash Eliminator on a chair in the trailer. *See* P. Lacoste Aff., R. Doc. 151-3 at 12; *see also* Lodrigue Aff., R. Doc. 151-3 at 13. This testimony is unchallenged. If a jury were to believe the testimony, it could reasonably infer that the Ash Eliminator was in the trailer when the fire started. Summary

judgment is unwarranted as to this issue.

Papermates' last three arguments can be considered together. As noted above, the plaintiffs have argued that the height of the Ash Eliminator and the width of its outer lip render it unreasonably dangerous by increasing the risk that a cigarette "will travel several centimeters when it falls from the ash tray." R. Doc. 151 at 7. In response, Papermates argues that: (1) there is no evidence that Mr. Lacoste was using an Ash Eliminator at the time of the fire, R. Doc. 143-2 at 11; (2) assuming he was using the Ash Eliminator, there is no evidence that a cigarette fell from the device and started the fire, *id.* at 12; and (3) assuming a cigarette fell from the device and started the fire, there is no evidence that the allegedly dangerous design of the Ash Eliminator caused this series of events to happen, *id.* at 13.

To establish causation, the plaintiffs must demonstrate that "the product defect was 'the most probable cause' of the injury." *Wheat v. Pfizer, Inc.*, 31 F.3d 340, 342 (5th Cir. 1994) (quoting *Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 312 (5th Cir. 1990)). The relevant portion of the plaintiffs' argument in opposition to summary judgment is reproduced in full:[2]

> Mr. Lacoste's preferred brand of cigarettes was Maverick. Mr. Lacoste would smoke Mavericks over other brands when they were available. Three packs of Maverick cigarettes

---

[2] A number of minor typos have been corrected.

were in the trailer near Mr. Lacoste when he died.
Furthermore, Phyliss Lacoste will testify that Maverick
cigarettes were found in the bottom of the [Ash Eliminator]
while Marlboro cigarettes were in the bottom of the Coke
Can.  Don Lacoste was with Mr. Lacoste the night before his
death and saw him purchase Maverick brand cigarettes.  So,
Mr. Lacoste was using the [Ash Eliminator] at some time
shortly before his death.

Plaintiffs' expert testified that if the cigarette had been
thrown onto the couch or chair it would most likely have
smoldered out.  The fire origin had to be between the chair
and the bed.  So, there are two theories as to how this fire
could have started.  First, Defendant claims that Lacoste
intentionally put a cigarette into the crack between the
chair and the couch, this amounts to suicide, but no
evidence of a suicide was presented.  Second, plaintiffs
believe he left a cigarette in the cut-out of the [Ash
Eliminator] (believing its claim to be a safety ashtray),
which we know was placed exactly far enough for the
cigarette to roll into the crack by force of gravity once it
burned down.  Not only is there a genuine issue of fact as
to this point, but the evidence overwhelmingly supports the
plaintiffs' position.

R. Doc. 151-1 at 6-7.

Plaintiffs' argument is based upon the hypothesis that Mr.

Lacoste had placed a chair next to the sleeper sofa in the

trailer and had set the Ash Eliminator or a soda can that he was

using as an ash tray (or both) on the chair.  *See* Appendix A.

Plaintiffs' expert recognized that there are at least three ways

in which the fire could have started.  First, a lit cigarette

might have fallen from an ash tray and rolled into the crevice

between the chair and the sofa bed.  Strecker Depo. at 67.

Second, a cigarette might have fallen off the top of the soda can

and rolled into the crevice.  *Id*.  Third, a cigarette might have

been dropped or placed on the chair or the sofa bed.  *Id.* at 67,

-12-

69.

        As detailed above, plaintiffs give two reasons why they
believe the first hypothesis is the most plausible.  First, they
argue that they know Mr. Lacoste was using the Ash Eliminator
rather than the soda can on the night of his death because they
found his favorite brand of cigarettes in the Ash Eliminator and
found a different brand of cigarettes in the soda can.  Second,
they argue that they know the fire was started by a cigarette
that fell out of the Ash Eliminator and rolled between the chair
and the sofa bed because a cigarette would have smoldered out if
it had been dropped on the chair or the sofa bed.  Neither of
these claims has any evidentiary support.  With respect to the
brand of cigarettes, plaintiffs cite to the affidavits of Phyliss
Lacoste and Shalane Lodrigue to support their view of the facts.
*See* R. Doc. 151 at 6.  But those affidavits do not indicate which
brand of cigarettes Mr. Lacoste preferred or which brand was
found in the Ash Eliminator.  Indeed, the record contains no
evidence at all on those issues.  Unsubstantiated assertions such
as those in the plaintiffs' brief are not sufficient to create a
genuine issue of fact.  *Little*, 37 F.3d at 1075.

        With respect to whether the fire would necessarily have
smoldered out if a cigarette had been dropped on the chair or the
sofa bed, plaintiffs misrepresent the cited portion of their
expert's testimony.  The expert testified that cigarettes

typically smolder out when they come to rest upon a flat, bare surface. *See* Strecker Depo. at 68 ("Usually, in order for the cigarettes to start a fire, they have to be insulated in some manner for the heat to build up. So, we usually see them either going in between cushions, like the cushions of a sofa, or they get wrapped up in bedding."); *accord* Fontenot Depo. at 86-87. He specifically recognized, however, that the trailer fire might have been started by a cigarette that fell on a ruffled sheet or a pillow on the sofa bed:

> Q: Would the [cigarette smolder out] if the cigarette dropped on a flat surface of covered bedding materials?
>
> A: That depends. If it was a wide, flat surface, chances are, it would probably go out. If it was ruffled or had other materials that were going vertically nearby, like, say, for example, a pillow there, that would carry the heat up. Then, you probably could get an ignition.
>
> Q: Would it be possible as a third scenario Mr. Lacoste simply disregarded the smoking materials, they weren't on an ashtray, he didn't drop it on the chair and it rolled over, he just left it in the bed somewhere?
>
> A: That's also a possibility, yes.
>
> Q: And the origin of the fire is, in your opinion, I think you said, *on* or next to the folded out sofa. So, it could have been next to, meaning lodged in between the chair and the sofa --
>
> A: Correct.
>
> Q: -- or *on* the sofa?
>
> A: Correct. ...

Strecker Depo. at 68-69 (emphasis added). Nothing in this

testimony indicates that "[t]he fire origin had to be between the chair and the bed," R. Doc. 151-1 at 6, let alone that the fire was "most probabl[y]" caused by a cigarette that fell from the Ash Eliminator. *Wheat*, 31 F.3d at 342. Plaintiffs' speculation as to which of several equally plausible scenarios occurred is insufficient to defeat summary judgment.

Moreover, the record does not contain any evidence to suggest that "the product *defect* was 'the most probable cause' of the injury." *Wheat*, 31 F.3d at 342 (emphasis added). Plaintiffs' expert offers no such opinion. He did nothing to test to Ash Eliminator, *see* Strecker Depo. at 75-76, could not say whether the device had been near the fire in the first place, *see id.* at 38, 66, and did not opine that the device was unreasonably dangerous or that a dangerous characteristic of the device caused the fire, *see id.* at 83. Indeed, the expert stated that it would be "unlikely" for a cigarette to fall out of an ash tray that was used as intended and not left unattended. Strecker Depo. at 76. The only evidence that plaintiffs have submitted on this score are unauthenticated, unexplained photographs of "cigarettes that fell from ashtrays." R. Doc. 151-1 at 7 n.24; *see also* R. Doc. 151-3 at 7-9. The photographs depict an Ash Eliminator standing next to two traditional ash trays, revealing that the Ash Eliminator is substantially taller than the

traditional ash trays.[3]  Small pieces of cigarette are shown

resting on the table next to the ash trays.  According to the

plaintiffs, these photographs demonstrate that when a lit

cigarette is placed on the Ash Eliminator, "the cigarette balance

shifts outward faster than normal and the cigarette can travel

several centimeters when it falls from the ashtray."  R. Doc.

151-1 at 7.

It is certainly true that a cigarette falling from a tall

ash tray has a longer vertical distance to travel than a

cigarette falling from a short ash tray.  But it does not follow

that this feature of the Ash Eliminator caused the fire in Mr.

Lacoste's trailer.  Plaintiffs' argument assumes that a cigarette

falling from a traditional ash tray would not have rolled or

bounced into the crevice between the chair and the sofa bed.

This argument rests on a number of unfounded assumptions about

the physics of falling objects; the contours of the chair

surface; the size, shape, weight and elasticity of cigarettes;

and so forth.  Plaintiffs' unsupported speculation is

insufficient to show that there is a genuine issue of fact.  As

the Fifth Circuit has aptly observed: "We resolve factual

---

[3] The Ash Eliminator appears to be approximately the size
and shape of a large coffee cup.  It is covered by a lid with
notches where lit cigarettes can be rested.  It appears that
spent cigarette butts are supposed to be inserted into the Ash
Eliminator through a hole in the lid, whereupon they self-
extinguish due to lack of oxygen.

controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.  We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."  *Little*, 37 F.3d at 1075.

Plaintiffs' final argument amounts to little more than an attempt to deflect attention from their lack of evidence.  They state that Papermates "claims that Lacoste intentionally put a cigarette into the crack between the chair and the couch."  R. Doc. 151 at 6.  This is simply untrue.  Papermates has very clearly stated its position that Mr. Lacoste started the fire through his own "gross carelessness" by either dropping a cigarette or leaving a cigarette unattended on an ash tray or soda can.  R. Doc. 143-2 at 12, 13.  There is ample support for this position; indeed, plaintiffs' own expert testified that the fire was caused by Mr. Lacoste's carelessness.  *See* Strecker Depo., R. Doc. 143-14 at 83, 118.  The issue is ultimately irrelevant to the disposition of the present motion, however. Papermates has moved for summary judgment on the issue of causation.  Plaintiffs have failed to set out specific facts grounded in evidence showing that a genuine issue exists as to whether "the product defect was 'the most probable cause' of the injury."  *Wheat*, 31 F.3d at 342.  Summary judgment must therefore

be granted for Papermates.  *See Celotex*, 477 U.S. at 324.

## III. MOTION FOR RECONSIDERATION

As noted above, plaintiffs have also asked the Court to reconsider part of its January 15, 2009 summary judgment order. Specifically, plaintiffs have asked the Court to vacate the portion of its order granting summary judgment in favor of Pilgrim International, Inc., the manufacturer of Mr. Lacoste's trailer.

### A.   Legal Standard

Federal Rule of Civil Procedure 54(b) provides that an order that adjudicates fewer than all the claims among all the parties "may be revised at any time" before the entry of a final judgment. FED. R. CIV. P. 54(b).  As Rule 54 recognizes, a district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. Unit A Oct. 1981).  Although the district court's discretion in this regard is broad, *see Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (en banc), it is

exercised sparingly in order to forestall the perpetual

reexamination of orders and the resulting burdens and delays.

*See generally* 18B CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE:

JURISDICTION § 4478.1 (2d ed. 2002).

The general practice of this Court has been to evaluate

motions to reconsider interlocutory orders under the same

standards that govern Rule 59(e) motions to alter or amend a

final judgment.[4]  While there may be circumstances in which a

different standard would be appropriate, *see, e.g.*, *American*

*Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-16 (4th Cir.

2003), the present motion does not present such circumstances.

The proper inquiry is therefore whether the moving party has

"clearly establish[ed] either a manifest error of law or fact or

... present[ed] newly discovered evidence." *Ross v. Marshall*,

426 F.3d 745, 763 (5th Cir. 2005) (quoting *Simon v. United*

*States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).  A motion to

reconsider is "not the proper vehicle for rehashing evidence,

legal theories, or arguments that could have been offered or

---

[4]  *See, e.g.*, *Rosemond v. AIG Ins.*, No. 08-1145, 2009 WL
1211020, at *2 (E.D. La. May 4, 2009) (Barbier, J.); *In re*
*Katrina Canal Breaches Consol. Litigation*, No. 05-4182, 2009 WL
1046016, at *1 (E.D. La. Apr. 16, 2009) (Duval, J.); *Total Sleep*
*Diagnostics, Inc. v. United Healthcare Ins. Co.*, No. 06-4153,
2009 WL 928646, at *2 (E.D. La. Mar. 31, 2009) (Fallon, J.); *Town*
*of Gramercy v. Blue Water Shipping Services*, No. 07-2655, 2009 WL
580445, at *1 (E.D. La. Mar. 4, 2009) (Engelhardt, J.); *Letap*
*Hospitality, L.L.C. v. Days Inn Worldwide, Inc.*, No. 08-1355,
2008 WL 2959649, at *2 (E.D. La. July 30, 2008) (Berrigan, J.).

raised before the entry of [the order]." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004).

**B.   Discussion**

Plaintiffs make five arguments in support of reconsideration.  First, they claim that the Court never addressed their request for additional time to respond to Pilgrim's motion for summary judgment.  This is not true.  As noted above, two pages of the January 15, 2009 order are devoted to plaintiffs' request for additional time under FED. R. CIV. P. 56(f).  The Court concluded:

> In this case, plaintiffs have made no effort to explain how further discovery will enable them to rebut the defendants' assertions.  They have not presented any affidavits, as required by Rule 56(f), nor have they made any attempt to describe the source or nature of their inability to respond. Indeed, plaintiffs' only objection appears to be that the motions for summary judgment were filed before the completion of discovery.  A Rule 56(f) continuance cannot be granted on this basis alone.  The parties have had more than a year to conduct discovery.  If some key discovery issue remained unresolved, the plaintiffs could have explained the issue to the Court and demonstrated how resolution of the issue would have permitted them to respond to defendants' arguments.  Instead, the plaintiffs have merely stated that discovery is incomplete.  Because the plaintiffs have not made the requisite showing under Rule 56(f), the Court denies their request for relief.

R. Doc. 135 at 6.  Plaintiffs' motion must be denied as to this argument.

Second, plaintiffs present new evidence that they claim shows the trailer suffered from a manufacturing defect.

Specifically, they argue that the trailer was built with two smoke detectors rather than the three detectors required by the FEMA manufacturing specifications. Plaintiffs have pointed to no record evidence in support of this argument. The trailer inspection form indicates that the smoke detectors met the relevant specifications at the time the trailer left Pilgrim's control. *See* R. Doc. 142-7 at 30. In addition, there is no record evidence suggesting that the absence of a third smoke detector was a cause of Mr. Lacoste's death. Plaintiffs' second argument is without merit.

Third, plaintiffs argue that the trailer suffered from a manufacturing defect because it was equipped with one type of smoke detector rather than two different types. Rather than pointing to the actual manufacturing specifications, however, they cite to the U.S. Fire Administration's website, which notes that "the USFA recommends the installation of both ionization and photoelectric or dual sensor smoke alarms." Smoke Alarms, http://www.usfa.dhs.gov/citizens/all_citizens/home_fire_prev/alarms/. This evidence is insufficient to establish that the trailer was unreasonably dangerous because it does not show that "the product deviated in a material way from the *manufacturer's* specifications or performance standards for the product or from otherwise identical products manufactured by the *same manufacturer*." LA. REV. STAT. § 9:2800.55 (emphasis added).

Plaintiffs' motion must therefore be denied as to this argument.

Fourth, plaintiffs make general allegations that Pilgrim's discovery responses contain information showing that the trailer suffered from a manufacturing defect. Plaintiffs do not specify what that information might be, however. Because the Court is unable to assess the merits of plaintiffs' argument in the absence of any hint as to what evidence shows that there is a genuine issue of fact, plaintiffs' motion must be denied as to this argument. *Cf. Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (quoting *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

The plaintiffs' remaining arguments go to their claim that the trailer was unreasonably dangerous in design because the bathroom did not contain an escape hatch. They first argue that the Court incorrectly referred to the report of plaintiffs' RV expert as "unsworn." R. Doc. 135 at 15, 16. It is true that the expert submitted an affidavit with his report. R. Doc. 125-5 at 1. This issue is ultimately irrelevant, however, because the substance of the Court's January 15, 2009 order did not turn on

the admissibility of the expert's report.  Rather, the Court held
that the expert's bare opinion that the bathroom could have been
built with an escape hatch, which was based only on photographs
of Mr. Lacoste's trailer and on the fire inspectors' reports, was
insufficient to create a genuine issue of fact as to whether a
specific alternative design existed at the time the trailer left
Pilgrim's control.  The expert did not cite any examples of other
trailers with bathroom hatches, did not explain how the listed
dimensions of the smallest available escape hatch would fit
within the dimensions of the bathroom, and did not give any other
explanation for his opinion other than to say that "[i]t *appears*
the escape window could have been installed on the rear wall by
the tub area or on off door sidewall [*sic*.] behind the toilet
area."  *Id.* at 4 (emphasis added).  This testimony does not
establish that an alternative design existed at the time the
trailer left Pilgrim's control.  *See Seither v. Winnebago
Industries, Inc.*, 853 So.2d 37, 41 (La. Ct. App. 2003) ("We find
that there was no valid alternative design presented.
[Plaintiff's expert] presented merely a concept that was
untested, unengineered, and not presented to the jury in any
fashion more than mere speculation."); *Jaeger v. Automotive Cas.
Ins. Co.*, 682 So. 2d 292, 298 (La. Ct. App. 1996) ("The assertion
that European seat belts lack tension eliminators [the allegedly
dangerous characteristic of the defendant's seat belt] is

insufficient to establish that a feasible alternative design existed at the time the product left the manufacturer's control that would have prevented the plaintiff's injury.  Plaintiff's expert did not disassemble the seat belt to evaluate the mechanism or describe any defect in design.").  *Compare State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 925 So. 2d 1, 12 (La. Ct. App. 2005) (finding that there was sufficient evidence that alternative design existed at the relevant time when plaintiff presented evidence to show that the defendant automobile manufacturer had incorporated the proposed feature into earlier models of the same vehicle).  As the Court held in its previous order and now reaffirms, the evidence is too speculative to support a jury verdict in favor of the plaintiffs.

Plaintiffs also argue that the Court incorrectly held that they had not adduced sufficient evidence to create a genuine issue of fact as to whether a bathroom escape hatch would have prevented Mr. Lacoste's death.  They present the following hypothesis in their brief:

> Mr. Lacoste probably left his cigarette in the 'safety ashtray' sold by defendant Papermates while he went to shower, and, at some point during the shower saw the smoke fingering into the bathroom.  Unaware of the great danger, Lacoste began to dress by putting on his socks.  When he began to feel lightheaded, he left the bathroom in an attempt to reach an exit but was overcome before he could get there.  Had there been an emergency exit in the bathroom, he would not have been forced to find his way through the main cabin of the trailer.

R. Doc. 142-2 at 9.  Plaintiffs have not introduced any new

evidence in support of this theory.  The Court therefore reaffirms its earlier conclusion:

> Even after drawing all reasonable inferences in favor of the plaintiffs, the evidence is not enough to support a jury verdict in their favor.  It would take an impermissible leap of faith for a jury to conclude, based on the vague hint that Mr. Lacoste might have opened the bathroom door at some point, that an extra escape hatch could have prevented Mr. Lacoste's death.  As plaintiffs' expert recognized, Mr. Lacoste's small trailer already came equipped with an exit door and three emergency exit windows, and was in compliance with the relevant standards of the National Fire Prevention Association.  *See* Strecker Report, R. Doc. 82-3 at 5, 12. Indeed, Mr. Lacoste's body was found next to one of the existing escape hatches.  *See* Strecker Report, R. Doc. 103-8 at 16.

R. Doc. 135 at 17.

In sum, plaintiffs have failed to demonstrate that this Court's order of January 15, 2009 should be altered in any way. Their motion for reconsideration must be denied.


**IV.  CONCLUSION**

For the foregoing reasons, Papermates' motion for summary judgment is GRANTED and plaintiffs' motion for reconsideration is DENIED.


New Orleans, Louisiana, this <u>3rd</u> day of June, 2009.

*Sarah Vance*

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

Diagram Created by Plaintiffs' Expert
(Not to Scale)

